IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/21/2020

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BJ SERVICES, LLC, *et al.*,[1] | ) | Case No. 20-33627 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 5** |

ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND
RETAIN DONLIN, RECANO & COMPANY, INC., AS CLAIMS,
NOTICING, AND SOLICITATION AGENT, EFFECTIVE AS OF JULY 20, 2020

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") Donlin, Recano & Company, Inc. ("DRC") as claims, noticing, and solicitation agent ("Claims Agent") for retention and appointment of in the Debtors' chapter 11 cases; all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BJ Services, LLC (3543); BJ Management Services, L.P. (8396); BJ Services Holdings Canada, ULC (6181); and BJ Services Management Holdings Corporation (0481). The Debtors' service address is: 11211 Farm to Market 2920 Road, Tomball, Texas 77375.

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Application.

and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain DRC as the Claims and Noticing Agent, effective as of July 20, 2020,  to perform the Claims Services set forth in the Application and under the terms of the Engagement Agreement relating to such services, and DRC is authorized to perform such services.

3.      DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases and is authorized and directed to maintain the Claims Register for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

4.      DRC is authorized and directed to provide an electronic interface for the filing of proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.  DRC shall provide access to the Claims Register without charge, including access to complete copies of proofs of claim with attachments, if any.

5.      DRC is authorized to take such other actions to comply with all duties set forth in the Application and this Order.

6.     DRC shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

7.     Without further order of this Court, the Debtors are authorized to compensate DRC on a monthly basis in accordance with the terms and conditions of the Engagement Agreement for the Claims Services, upon DRC's submission of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith, without the need for DRC to file fee applications or otherwise seek court approval for the compensation of its services and reimbursement of its expenses.

8.     DRC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the United States Trustee, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices.

9.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices, and the parties shall seek resolution of the matter from the Court if resolution is not achieved.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, DRC's fees and expenses incurred in connection with the Claims Services shall be administrative expenses of the Debtors' chapter 11 estates.

11.     The application of DRC's retainer to all prepetition invoices is approved. The retainer shall be replenished to the original retainer amount to the extent necessary, and thereafter DRC may hold the retainer as security of payment of DRC's final invoice for services rendered and expenses incurred in performing the Claims Services.

12.     Except to the extent set forth below, the Debtors are authorized to indemnify DRC

under the terms of the Engagement Agreement:

13.     DRC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims Services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

14.     The Debtors shall have no obligation to indemnify DRC, or provide contribution or reimbursement to DRC, for any claim or expense that is either:   (a) judicially determined (the determination having become final) to have arisen from DRC's gross negligence, willful misconduct, bad faith, self-dealing, breach of fiduciary duty (if any), or fraud, or (b) settled prior to a judicial determination under (a), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Claims Agent should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

15.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in the Debtors' bankruptcy cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing the Debtors' bankruptcy cases, DRC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, DRC must file an application therefor in this Court, and the Debtors may not pay any such amounts to DRC before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by DRC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify DRC.  All parties in interest shall

retain the right to object to any demand by DRC for indemnification, contribution, or reimbursement.  In the event that DRC seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in DRC's own applications, both interim and final, but determined by this Court after notice and a hearing.

16.     In the event DRC is unable to provide the Claims Services, DRC will immediately notify the Clerk and the Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

17.     DRC shall not cease providing claims and noticing services during the Debtors' chapter 11 cases for any reason, including nonpayment, without an order of the Court.

18.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Application or any order granting the relief requested by the Application or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of

5

the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Application are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection, or seek avoidance of, all such liens.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: July 21, 2020

_____
Marvin Isgur
United States Bankruptcy Judge

# <u>Exhibit 1</u>

**Claims and Noticing Engagement Agreement**

## Donlin, Recano & Company, Inc.

### STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

### TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc.** (hereinafter called "DRC") agrees to provide BJ Services, LLC including but not limited to any and all bankruptcy cases filed by any affiliate of BJ Services (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. <u>SERVICES:</u>** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and other tabulation and other services as required by the Client or as otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. <u>CHARGES</u>**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC, subject to advance notice to Client prior to DRC incurring of any out of pocket expenses individually or in the aggregate exceeding $10,000. Any out of pocket expenses for travel or meals must be approved in advance. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. <u>TRANSPORTATION OF DATA</u>**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an

6/8/2020                                                                                                            **Page 1 of 7**

**Donlin, Recano & Company, Inc.**

additional mutually agreed upon cost may be required by DRC.

**4. EVERGREEN RETAINER & INVOICES**:   At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $30,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice of the Client in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer, subject to Client's review and approval.  Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client.  DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made.  DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer.  Client shall pay the charges set forth in Schedule A, attached hereto.  DRC shall invoice the Client monthly for all services rendered during the preceding month.  Charges for a partial month's service shall be prorated based on a thirty (30) day month.  Terms are net 20 days following the date of billing.  Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC.  Upon a Failure to Pay of more than 30 days, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach").  If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable.   Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses.  The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach").   Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.   Following the termination of this Agreement or services to the Client hereunder, DRC shall promptly return to Client any amount of the Retainer that remains following application of the Retainer to payment of unpaid invoices.

**5. STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.  DRC shall return or dispose of any Client data programs, storage media, or other materials furnished by Client to DRC in connection with this Agreement (collectively, the "Client Materials") in the manner requested by the Client.

**6. E-MAIL COMMUNICATIONS**:  DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address.  However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free.  It remains the

**Donlin, Recano & Company, Inc.**

responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**:  All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**:  Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement.   Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client.  DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC.  Client is responsible for the accuracy of all programs, data and other information it submits to DRC.  DRC warrants that Services will be performed timely in a professional and workmanlike manner, in accordance with applicable industry standards. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report.  If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**:  This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above.  In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement.  The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement.  In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer.  Client agrees to pay for such services in accordance with DRC's then existing fees for such services.  If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**:  The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**:  The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or  misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties.  The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect

**Donlin, Recano & Company, Inc.**

to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. <u>CONFIDENTIALITY</u>:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information. A breach by DRC of any promises or agreements contained herein may result in irreparable and continuing damage to Client for which there will be no adequate remedy at law, and Client shall be entitled to seek injunctive relief or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate), without having to post any bond in support thereof.

**13. <u>OWNERSHIP OF PROGRAMS</u>:** Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. <u>SYSTEMS IMPROVEMENTS</u>:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. <u>UNUSUAL MEASURES</u>:** Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**16. <u>JURISDICTION</u>.** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17. <u>FORCE MAJEURE</u>.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18. <u>NOTICE</u>.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows:  if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, New York, New York 11219, Attention:  Nellwyn Voorhies, Esq.; if to the Client, to Travis M. Bayer, Esq., 300 North LaSalle, Chicago,

**Donlin, Recano & Company, Inc.**

Illinois, 60654.

**19.  GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20.  SEVERABILITY.**  All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**21.  ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.  For the avoidance of doubt, DRC shall only be permitted to assign this Agreement with the advance written consent of Client.

**22.  GENERAL**:  The terms and conditions of this Agreement may be modified by mutual written agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy.  The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

| | |
|---|---|
| By: | Nellwyn Voorhies |
| Signature: | |
| Title: | Executive Director |
| Date: | June 8, 2020 |

Accepted and Approved:

BJ Services, LLC

| | |
|---|---|
| By: | John R. Bakht |
| Signature: | |
| Title: | Executive Vice President & General Counsel |

6/8/2020

DRC | Donlin Recano

**Page 5 of 7**

www.donlinrecano.com

**Donlin, Recano & Company, Inc.**

Date:      June 8, 2020

This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.



**www.donlinrecano.com**

**Donlin, Recano & Company, Inc.**

### SCHEDULE A
### Fee Schedule

| Professional Service | Hourly Rates |
|---|---|
| Executive Staff | No charge |
| Senior Bankruptcy Consultant | $145 - $175 |
| Case Manager | $110 - $140 |
| Technology/Programming Consultant | $85 - $110 |
| Consultant/Analyst | $75 - $90 |
| Clerical/Analyst | $35 - $45 |

Case 20-33627   Document 66-1   Filed on 07/21/20 in TXSB   Page 15 of 15

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.09 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $90 - $175 as needed |
| Schedule/SOFA preparation | $90 - $195 per Hour |

| Claims Docketing and Management | |
|---|---|
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.07 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |

| Miscellaneous | |
|---|---|
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |