**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BJ SERVICES, LLC, *et al.*,[1] | ) ) | Case No. 20-33627 (MI) |
| Debtors. | ) ) ) | (Jointly Administered) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY APPLICATION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF SAGE REAL ESTATE SOLUTIONS, LLC
AS REAL ESTATE BROKER, (II) APPROVING THE PRIVATE SALE OF
CERTAIN REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 25, 2020 AT 1:30 PM (CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AUDIO/VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832)-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE," SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BJ Services, LLC (3543); BJ Management Services, L.P. (8396); BJ Services Holdings Canada, ULC (6181); and BJ Services Management Holdings Corporation (0481). The Debtors' service address is: 11211 Farm to Market 2920 Road, Tomball, Texas 77375.

4844-4175-8409

> **YOUR APPEARANCE. SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN SEPTEMBER 25, 2020.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this application (the "Application"):

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):

    a. approving the employment and retention pursuant to section 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and rule 2014-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules") of Sage Real Estate Solutions, LLC ("Sage") as the Debtors' real estate broker with respect to the real property located at 180 Lee Lane, Searcy, Arkansas 72143 (the "Property") on the terms described in the Exclusive Listing Agreement attached to the Order as Exhibit 1 (the "Sage Agreement");

    b. authorizing the sale of the Property, along with the furniture, fixtures, and equipment therein, for total consideration of $1,750,000.00 in cash (the "Sale") pursuant to that certain Real Estate Contract attached to the Order as Exhibit 2 (the "Purchase Agreement") by and between BJ Services, LLC (the "Seller") and Bowerman Real Estate LLC and/or its assigns (the "Buyer") free and clear of all liens, claims, encumbrances, and other interests; and

    c. granting related relief.

---

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Warren Zemlak, Chief Executive Officer of BJ Services, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "First Day Declaration"), incorporated herein by reference.

2

4844-4175-8409

2.      In support of this Application, the Debtors submit the Declarations of Anthony C. Schnur, Chief Restructuring Officer for the Debtors ("Schnur Declaration"), attached hereto as **Exhibit A**, and of Rick O'Brien, Executive Broker at Sage, attached hereto as **Exhibit B** (the "O'Brien Declaration").

**Jurisdiction and Venue**

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a), 327, 328, and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2002 and 6004.

**Background**

6.      BJ Services, LLC and its Debtor affiliates were leading providers of pressure pumping and oilfield services for the petroleum industry. Headquartered in Tomball, Texas, the Debtors formerly operated through two segments, hydraulic fracturing and cementing. The Debtors primarily served customers in upstream North American oil and natural gas shale basins in the completion of new wells and in remedial work on existing wells. The Debtors consummated going-concern sales of their cementing business and certain hydraulic fracturing and intellectual property assets on August 27, 2020 and August 28, 2020, respectively.

7.      On July 20, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. On the Petition Date, the Court entered an order [Docket No. 13] authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

8. On July 28, 2020, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 199]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

**A.     Retention of Sage**

9. Prepetition, BJ Services, LLC retained CBRE, Inc. ("CBRE") as real estate broker pursuant to that certain Transaction Management and Brokerage Agreement dated November 8, 2018 and Engagement Letter dated February 26, 2019 (collectively, the "CBRE Agreement"). The CBRE Agreement provided for a standard six percent (6%) commission to CBRE upon the sale of the Property. It also provided that CBRE may retain subagents to provide or assist CBRE in providing services thereunder. Accordingly, CBRE retained Sage as subagent to assist in the marketing and sale of the Property. In exchange for such services, CBRE agreed to pay Sage seventy-five percent (75%) of any brokerage fee received due to the sale of the Property.

10. The CBRE Agreement has since expired, and subject to the Court's approval, the Debtors have agreed (with CBRE's consent) to enter into the Sage Agreement effective as of September 16, 2020. The terms of the Sage Agreement provide for payment to Sage of the same six percent (6%) brokerage fee contemplated under the CBRE Agreement (the "Brokerage Fee"). The Brokerage Fee is calculated off of the gross sale price of the Property and shall be paid out of the proceeds of the Sale. Separately, Sage agreed to pay twenty-five percent (25%) of the Brokerage Fee (the "Referral Fee") to CBRE after receipt to honor their original agreement related

4

to the CBRE Agreement.[3] The Debtors believe that the Brokerage Fee is reasonable and is necessary to maximize the value of the Property.

**B.     The Sale Process**

11.     Sage marketed the Property from March 21, 2019 through September 11, 2020. Sage circulated a marketing package that was listed on the following commercial Multiple Listing Services: CoStar Commercial Real Estate, LoopNet, Catylist, and Crexi. The online listings received 12,763 total views since March 21, 2019. Those total views come from 3,693 unique users.

12.     Bi-monthly email communications were sent regularly through Catylist, which is the preferred listing engine for the Central Arkansas Commercial Real Estate brokerage community. That distribution list consists of approximately 376 brokers, agents, and other Commercial Real Estate-related professionals.

13.     Sage solicited interest from approximately 50 potential purchasers and real estate brokers. Four prospective purchasers expressed interest in and toured the Property, including the Buyer. Sage received formal offers from three such prospective purchasers. Buyer's offer provided the highest monetary value and also provided other nonmonetary terms that were more favorable than the other offers received.

14.      The Debtors believe that entry into the Purchase Agreement and approval of the Sage Agreement will maximize the value of the Property for the benefit of their estates. The Purchase Agreement is the highest offer for the Property and the Debtors no longer have use for the Property or the furniture, fixtures, and equipment located therein. The Debtors submit in their sound business judgment that Sage's marketing process was robust and that any further process is

---

[3]    For the avoidance of doubt, the Referral Fee is not an additional cost to the Debtors, but rather paid out of the six percent Brokerage Fee.

unlikely to yield higher or better offers. In addition, the Buyer would like to close the transaction shortly after receiving Court approval of the transaction.

C.    **Key Provisions of the Sage Agreement and Purchase Agreement**

15.    A summary of the material terms of the Sage Agreement is set forth below.[4]

| | |
|---|---|
| **Sage's Services** | Real estate broker with respect to the sale of the Property |
| **Term of Agreement** | Twelve months |
| **Brokerage Fee** | Fee of 6% of the of the gross sale, transfer or exchange price of the Property. The fee shall be calculated and due and payable upon closing and is inclusive of all fees payable to any cooperating broker. Any such commission shall be paid out of the proceeds of such sale and shall be due to Sage within five (5) days from the closing of any transaction pursuant to the Sage Agreement. |
| **Indemnification** | The Debtors and Sage have agreed to indemnify, hold the other harmless, and defend each other from any and all losses, damages, claims, liabilities or expenses, including without limitation reasonable attorney's fees, arising out of, resulting from or relating to any breach of their obligations under the Sage Agreement. |

16.    A summary of the material terms of the Purchase Agreement is set forth below.[5]

| | |
|---|---|
| **Seller** | BJ Services, LLC |
| **Buyer** | Bowerman Real Estate LLC and/or its assigns |
| **Property** | 180 Lee Lane, Searcy, Arkansas 72143 |
| **Purchase Price** | $1,750,000.00 |
| **Earnest Money** | $10,000.00 |
| **Investigation** | Buyer shall have sixty (60) days from the date of the Purchase Agreement (the "Investigation Period") to obtain satisfactory results of an environmental report. |
| **Closing** | Closing shall occur within fourteen (14) days following expiration of the Investigation Period. |
| **FF&E** | All furniture, fixtures, and equipment currently located on Property shall be conveyed to Buyer upon closing. This includes, but is not limited to, |

---

[4]    The following summary chart is included for the convenience of the Court and parties. To the extent this summary conflicts with the Sage Agreement, the Sage Agreement shall govern. Capitalized terms used but not defined herein or in the following summary shall have the meaning ascribed to them in the Sage Agreement.

[5]    The following summary chart is included for the convenience of the Court and parties. To the extent this summary conflicts with the Purchase Agreement, the Purchase Agreement shall govern. Capitalized terms used but not defined herein or in the following summary shall have the meaning ascribed to them in the Purchase Agreement.

6

4844-4175-8409

|  | all office furniture, shop equipment, pressure washing equipment, air compressors, fuel tanks, electronic and network equipment, security equipment, fuel pumps, truck scale, etc. |
|---|---|

## Basis for Relief Requested

I. **The Debtors Should be Authorized to Sell the Property Free and Clear of All Liens, Claims, Encumbrances, and Other Interests.**

   A. **Selling the Property is a Reasonable Exercise of the Debtors' Sound Business Judgment and in the Best Interests of their Estates.**

17. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Black v. Shor (In re BNP Petrol. Corp.)*, 642 F. App'x 429, 434-35 (5th Cir. 2016) ("[T]he mandate of § 363 . . . requires that a sale of the estate's assets 'be supported by an articulated business justification, good business judgment, or sound business reasons.'") (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)); *Institutional Creditors v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("[A] debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief

7

that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re MF Glob. Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference.").

18. This Court's power under section 363 is supplemented by section 105(a), which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title…." 11 U.S.C. § 105(a); *see also In re Tex. Rangers Baseball Partners*, 431 B.R. 706, 710 (Bankr. N.D. Tex. 2010) (noting that sections 363 and 105 grant the bankruptcy court the power to "regulate the mechanism of a sale outside the ordinary course.").

19. If a valid business justification exists for the sale, as it does in this case, a debtor's decision to sell property outside of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkuom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to the debtor's proposed asset sale must make a showing of "bad faith, self-interest or gross negligence." *Id*. at 656.

20. The Debtors submit that selling the Property pursuant to the Purchase Agreement is an exercise of sound business judgment. The Debtors no longer have use for the Property or the related furniture, fixtures, and equipment. The Debtors believe that Sage's marketing process was reasonably calculated to realize the maximum value for the Property and that no further marketing of the Property is necessary or would realistically increase the potential sales price for the benefit of Debtors and their estates. Accordingly, the Debtors have determined that the proposed Sale will

8

realize the greatest possible recovery for their creditors and other parties-in-interest. In reaching this conclusion, the Debtors acted on an informed basis, in good faith, and with the honest belief that the Sale is in the best interests of the Debtors' estates. Thus, sound business justifications exist, and the proposed Sale of the Property should be approved.

### B. The Disposition of the Property by Private Sale is Appropriate.

21. Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). Private sales are appropriate where the debtor demonstrates that the proposed sale is permissible pursuant to section 363 of the Bankruptcy Code. *See In re Cypresswood Land Partners, I,* 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("there is no prohibition against a private sale. . . [and] there is no requirement that the sale be by public auction"); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("[S]ales of property rights outside the ordinary course of business may be by private sale or public auction."). Additionally, courts have held that a debtor has broad discretion to determine the manner in which its assets are sold. *See Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through private sale).

22. Sage has been engaged in an extensive marketing process for more than 17 months and has contacted more than 50 potential purchasers, brokers, or investors regarding the sale of the Property in addition to widely advertising the Property. The town of Searcy, Arkansas, where the Property is located, has a population of approximately 23,000 persons and has a limited number of companies or individuals that are prospective purchasers of the Property. The Debtors therefore believe that an auction would be unlikely to yield a higher purchase price. Allowing the Debtors

9

to sell the Property through private sale will ensure the greatest net recovery to their estates, and is thus well within the Debtors' sound business judgment and should be approved.

        **C.**      **The Sale of the Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests Is Warranted Under Section 363(f) of the Bankruptcy Code**

23.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, interest, or encumbrance in such property if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) such entity consents; (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f). Section 363(f) is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions listed in that section when selling property of the estate. *See In re Borders Grp., Inc.*, 453 B.R. at 483–84 (noting that the debtor can sell its property "free and clear of any interest" if "at least one" of the five conditions under section 363(f) is met); *see also In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied.").

24.     The Debtors believe that, as of the Petition Date, there were no liens upon the Property. However, the Debtors submit that in the event any liens or interests exist with respect to the Property, any such lien or interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess. The Debtors accordingly request authority to sell the

10

Property free and clear of all liens, claims, interests, and encumbrances, with any such liens, claims, interests, or encumbrances attaching to the proceeds of the Sale.

25. Accordingly, the sale of the Property satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

### D. The Buyer Should Be Entitled to the Protections of Section 363(m)

26. The Debtors request that the Court find that the Buyer is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

27. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Good faith purchaser status has been allowed by many courts in this district and circuit. *See, e.g., In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. June 18, 2020) [Docket No. 1330]; *In re Whiting Petroleum Corp.*, No. 20-32021 (DRJ) (Bankr. S.D. Tex. May 6, 2020) [Docket No. 276]; *In re EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Apr. 27, 2020) [Docket No. 1198]; *Sullivan Central Plaza I Ltd. v. BancBoston Real Estate Capital Corp.*, 106 B.R. 934, 942 (Bankr. N.D. Tex. 1998) (listing characteristics evidencing a lack of a good faith under section 363(m)) (citing *Bleaufontaine, Inc. v. Roland Int'l (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1388 (5th Cir. 1981)).

28. Section 363(m) fosters the "policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 521 (5th Cir. 2014) (quoting *In re Sax,* 796 F.2d 994, 998 (7th Cir. 1986));

11

*see New Indus., Inc. v. Byman (In re Sneed Shipbuilding, Inc.)*, 916 F.3d 405, 409 (5th Cir. 2019) ("A different motivation than complexity motivates section 363(m) mootness: the need to encourage parties to bid for estate property.").

29. The Debtors will serve a copy of this Application and provide an opportunity to object to the relief sought herein to their secured lenders, the Creditors' Committee, the United States Trustee, and any lienholders (if any) with an interest in the Property. Further, none of the Property will be sold to insiders and the consideration to be received pursuant to the Sale is substantial, fair, and reasonable. Accordingly, the Debtors submit that the Sale of the Property consummated in accordance with the relief sought herein will be an arms'-length transaction entitling a purchaser to the protections of section 363(m) of the Bankruptcy Code.

## II.     The Debtors Should be Authorized to Retain Sage Pursuant to Section 327(a) of the Bankruptcy Code

30. As noted above, the Debtors determined, in their sound business judgment, to retain an experienced broker to assist them with a value-maximizing sale of the Property. Accordingly, the Debtors seek to employ and retain Sage pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, to assist the Debtors with the Sale of the Property.

31. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

32. Bankruptcy Rule 2014(a) requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014(a).

33. Furthermore, section 328(a) permits "the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including . . . on a fixed or percentage fee basis . . . [,]" 11 U.S.C. § 328(a).

34. As described in further detail in the O'Brien Declaration, Sage began marketing the Property on March 21, 2019. Founded in 2005, Sage is a member of the Cushman & Wakefield Alliance and has many decades of commercial real estate experience, both in Arkansas and in large metropolitan markets. Sage is a locally owned and operated, full service commercial real estate services company, offering services in brokerage, asset management, facilities management, development and other commercial real estate services. Sage transacted over $400 million in sales and leases in 2019 and currently manages and markets approximately 6.5 million square feet of office, industrial and retail properties across Arkansas.

35. Accordingly, the Debtors believe that Sage is uniquely qualified to perform the services specified herein. Without Sage's engagement, the Debtors would be unlikely to gain the maximum return on the sale of the Property. Furthermore, the compensation arrangement with Sage is structured to provide Sage with the incentive to obtain the highest possible price for the Property.

36. The Debtors respectfully submit that the retention and employment of Sage as real estate broker under the terms of the Sage Agreement in connection with these chapter 11 cases is permitted by sections 327(a) and 328(a) of the Bankruptcy Code, and this Application meets the

13

requirements of Bankruptcy Rule 2014. Such retention and employment is reasonable under the circumstances and is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

### A. Terms of Engagement

37. Pursuant to the Sage Agreement, and subject to the Court's authorization, Sage has agreed to serve as real estate broker to the Debtors and their estates.[6] Pursuant to the terms of the Sage Agreement, the Debtors propose to pay Sage a brokerage fee equal to six percent (6%) of the gross sale price for the Sale of the Property. As more fully set forth in the Sage Agreement, the Debtors and Sage have agreed to indemnify, hold the other harmless, and defend each other from any and all losses, damages, claims, liabilities or expenses, including without limitation reasonable attorney's fees, arising out of, resulting from or relating to any breach of their obligations under the Sage Agreement.

38. The Debtors submit that the terms and conditions of the Brokers' retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.

### B. Sage's Disinterestedness

39. To the best of the Debtors' knowledge, Sage is a "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code: Sage does not have any connection with or hold any interest adverse to the Debtors, their creditors, or any other party

---

[6] Terms in this section not otherwise defined herein shall have the meanings ascribed to them in the CBRE Agreement.

4844-4175-8409

in interest, or their respective attorneys and accountants, except as may be set forth in the O'Brien Declaration.

40. Specifically, Sage:

   a. is not a creditor, equity security holder, or an insider of the Debtors;

   b. was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

   c. does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

41. The Debtors have been informed that Sage will conduct an ongoing review of its files for the duration of its retention, and if any new relevant facts or relationships are discovered, Sage will disclose such information to the Court.

42. The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based, and made in reliance upon, the O'Brien Declaration and other information provided by Sage.

43. The Debtors submit that the retention of Sage on the terms and conditions set forth in the Sage Agreement, as summarized herein, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest. The Sage Agreement is a commercially reasonable compensation and retention agreement for real estate brokers who provide similar services to those provided by Sage. Moreover, Sage has marketed the Property for over a year and has already obtained a purchaser for the Property.

44. Furthermore, the Debtors believe that Sage is a "disinterested person" and does not hold or represent any interest adverse to the estates, the Sage Agreement provides reasonable compensation to Sage for the services to be provided, and Sage will provide a substantial benefit to the Debtors by efficiently liquidating the Property, which will produce significant cash for the

Debtors' estates. Accordingly, the Court should approve the Sage Agreement and the retention of Sage pursuant to section 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

### Emergency Relief is Appropriate

45. The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Local Rule 9013. The Buyer is anxious to close the Sale as quickly as possible and the Buyer's contingency periods outlined in the Purchase Agreement do not begin until this Court has approved the relief requested herein. The Debtors want to ensure that they do not lose the sale and are able to obtain the maximum recovery possible for the benefit of their estates. The Debtors request that the Court approve the relief requested herein on an emergency basis.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

46. To implement the requested relief successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). In order to minimize delay, disruption, and burden on these estates and to maximize the value of the Property, the Debtors require Sage to sell the Property as expeditiously as possible. To that end, the Buyer has agreed close the sale as soon as practicable. The Debtors believe that, in order to maximize value and avoid unnecessarily disrupting the sale, the sale should be consummated without further delay.

### Reservation of Rights

47. Nothing contained in this Application or any actions taken by the Debtors pursuant to relief granted is intended or should be construed as: (i) an admission as to the validity of any claim or lien against the Debtors, (ii) a waiver of the Debtors' rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption,

or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

### Notice

48.   The Debtors will provide notice of this Application to the following parties:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the Creditors' Committee and counsel thereto; (c) the administrative agent under the Debtors' prepetition asset-based revolving credit facility and counsel thereto; (d) the administrative agent under the Debtors' prepetition term loan facility and counsel thereto; (e) the administrative agent under the Debtors' prepetition real estate loan and counsel thereto; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) the state attorneys general for states in which the Debtors conduct business; (k) any lienholders with interests in the Property; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

49.   No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested in this Application and granting such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
September 21, 2020

*/s/ Paul D. Moak*

| | |
|---|---|
| **GRAY REED & McGRAW LLP** | **KIRKLAND & ELLIS LLP** |
| Jason S. Brookner (TX Bar No. 24033684) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Paul D. Moak (TX Bar No. 00794316) | Joshua A. Sussberg, P.C. |
| Amber M. Carson (TX Bar No. 24075610) | Christopher T. Greco, P.C. (admitted *pro hac vice*) |
| 1300 Post Oak Boulevard, Suite 2000 | 601 Lexington Avenue |
| Houston, Texas 77056 | New York, New York 10022 |
| Telephone: (713) 986-7127 | Telephone: (212) 446-4800 |
| Facsimile: (713) 986-5966 | Facsimile: (212) 446-4900 |
| Email: jbrookner@grayreed.com | Email: joshua.sussberg@kirkland.com |
|        pmoak@grayreed.com |        cgreco@kirkland.com |
|        acarson@grayreed.com | |

-and-

*Co-Counsel to the Debtors
and Debtors in Possession*

Samantha G. Lawrence (admitted *pro hac vice*)
Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: samantha.lawrence@kirkland.com
       josh.altman@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

## Certificate of Service

I certify that on September 21, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Paul D. Moak*
Paul D. Moak

18