United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 01, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| | § | CASE NO: 20-33627 |
| BJ SERVICES, LLC, *et al.*, | § § | CHAPTER 11 |
| Debtors. | § § | |
| | § | |
| GACP FINANCE CO., LLC, | § § | |
| Plaintiff, | § § | |
| | § | |
| VS. | § § | ADVERSARY NO. 22-3107 |
| | § | |
| KEYSTONE OILFIELD FABRICATION LLC, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION

GACP Finance Co., LLC filed claims against Keystone Oilfield Fabrication LLC for Keystone's refusal to relinquish equipment to which GACP believes it is entitled and over which Keystone claims a garageman's lien under the Texas Property Code. Keystone filed counterclaims and GACP moved to dismiss. The Court (i) dismisses Keystone's counterclaims for (x) a declaratory judgment that GACP abandoned property; (y) quantum meruit; and (z) unjust enrichment; and (ii) permits Keystone to amend the quantum meruit and unjust enrichment counterclaims.

## BACKGROUND

Keystone repairs and services oil field proppant equipment. (ECF No. 36 at 8). BJ Services delivered some equipment to Keystone for repairs. (ECF No. 36 at 8). BJ Services paid for the repairs but failed to pick up the repaired equipment. (ECF No. 36 at 8). Keystone alleges that it

cared for the equipment and stored it in its yard in Wise County, Texas. (ECF No. 36 at 8). BJ Services did not pay Keystone any storage costs. (ECF No. 36 at 8).

BJ Services filed for bankruptcy on July 20, 2020. (Case No. 20-33627, ECF No. 1). GACP is the Administrative Agent under a Term Loan Credit and Guaranty Agreement between BJ Services and third-party lenders. (ECF No. 1 at 2). GACP holds first priority security interests in and liens on all of BJ Services' machinery and equipment.[1] (ECF No. 1 at 4). On September 2, 2020, the Court entered the Lift Stay Order permitting GACP to exercise its non-bankruptcy law rights with respect to its collateral and mandating that GACP—not BJ Services—pay all costs incurred in connection with its collateral after entry of the Lift Stay Order. (Case No. 20-33627, ECF No. 553 at 2–3).

On March 30, 2022, GACP filed a complaint alleging that Keystone improperly possessed the equipment. (ECF No. 1 at 3). On April 29, 2022, Keystone filed a motion to: (i) dismiss for lack of subject matter jurisdiction or failure to state a claim; or (ii) abstain. (ECF No. 8). The Court denied the motion to dismiss on November 28, 2022. (ECF No. 31 at 13). Keystone then filed counterclaims for: (i) declaratory judgment regarding state law lien rights; (ii) quantum meruit focused on storage fees Keystone incurred; (iii) unjust enrichment focused on storage fees Keystone incurred; and (iv) attorneys' fees arising under Texas law from prosecuting this lawsuit. (ECF No. 36 at 9–10). GACP moved to dismiss the counterclaims. (ECF No. 42).

On December 16, 2022, the Court approved an agreement in which Keystone agreed to turn the equipment over to GACP, and GACP would sell the equipment with any liens attaching to the proceeds of the sale. (ECF No. 39).

---

[1] BJ Services' Plan creates the Wind-Down Trust to take title to and possession of certain of BJ Services' assets. (Case No. 20-33627, ECF No. 1093 at 34). Equipment in the Wind-Down Trust is encumbered by GACP's liens and is subject to the Lift Stay Order. (Case No. 20-33627, ECF No. 1093 at 35).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2)(K). Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, the Court will not strain to find inferences favorable to the plaintiff. *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

## DISCUSSION

GACP moves for the dismissal of Keystone's counterclaims. (ECF No. 42). For the reasons stated below, a portion of the declaratory judgment counterclaim, the quantum meruit counterclaim, and the unjust enrichment counterclaim are dismissed. Despite the dismissals, the Court grants leave to amend except as to the declaratory judgment of abandonment.

### I. DECLARATORY JUDGMENT

Keystone seeks a declaratory judgment that "a) GACP lacks an entitlement to a possessory right to the Equipment as against Keystone; and b) Keystone's lien and right in and to the Equipment has priority over any claimed lien, security interest, or right of GACP." (ECF No. 36 at 9). In the alternative, Keystone seeks a declaratory judgment that "GACP has abandoned its claim to the Equipment and lacks any lien, security interest, or right in the Equipment." (ECF No. 36 at 10) (cleaned up).

The Court entered the Lift Stay Order on September 2, 2020. (Case No. 20-33627, ECF No. 553 at 10). Keystone asserts a lien under Section 70.003 of the Texas Property Code as a "garageman" for "storage, clean up, and other damages that occurred after November 6, 2020." (ECF No. 36 at 9). Thus, Keystone seeks to recover for costs it incurred after the Court entered the Lift Stay Order, which authorizes GACP to:

> [E]xercise all of its rights under applicable non-bankruptcy law with respect to the Stay Relief Collateral, including, without limitation or expanding upon such non-bankruptcy law, all rights to assemble, repossess, foreclose upon, market for private or public sale (in each case that is not a credit bid as allowed herein, in arms'-length transactions to non-insider third-parties in a commercially reasonable manner), and liquidate the Stay Relief Collateral wherever located and by whomsoever held under applicable non-bankruptcy law and the Equipment Term Loan Documents, and sell the same.

(Case No. 20-33627, ECF No. 553 at 2). GACP contends that the counterclaim for the first two declarations should be dismissed because Keystone failed to show that it is a garageman and did

not give the requisite notice of its purported lien as Sections 70.004 and 70.006 of the Texas Property Code require. (ECF No. 42 at 7). "A garageman with whom a motor vehicle . . . is left for care has a lien on the motor vehicle . . . for the amount of the charges for the care . . . ." TEX. PROP. CODE § 70.003. While BJ Services originally delivered the equipment to Keystone for repairs, BJ Services paid Keystone for the repairs. Keystone has plausibly alleged that the equipment was then left with Keystone for care. Thus, Keystone has plausibly alleged that it has a garageman's lien under Section 70.003.

GACP's argument that Keystone violated Sections 70.004 and 70.006 are unpersuasive— 70.004 is narrowly applied to towing companies who take possession of a vehicle without an owner's knowledge. *See Chase Manhattan Bank Usa, N.A. v. Daimler Motors, Inc.*, No. 05-01-01904-CV, 2002 WL 31513404, at *3 (Tex. App.—Dallas Nov. 13, 2002, no pet.) ("[Section 70.004] applies largely-if not solely-to such entities as towing companies, who often take possession of a vehicle without the owner's knowledge."). Keystone did not perform as a towing company, and BJ Services voluntarily dropped the equipment off with Keystone. Section 70.006 does not contain a time by which any notice must be given for a lien under 70.003 if the liened property has not been sold. Because Keystone never sold the equipment, it is not clear that any notice was necessary. And GACP offers no other argument for why Keystone "fails to specifically plead facts sufficient to show . . . that Keystone provided the requisite notice of its purpose lien to the Wind-Down Trust and GACP as required by [Section 70.006]." (ECF No. 42 at 7). Keystone has pled a plausible claim to recover costs incurred after November 6, 2020 that created a garageman's lien. The motion to dismiss this portion of the declaratory action is denied.

The Court dismisses Keystone's alternative request for a declaratory judgment. Keystone only presents the naked assertion that "GACP has abandoned the [*sic*] its claim to the Equipment

. . . ." (ECF No. 36 at 10). This runs contrary to the Lift Stay Order in which the Court permitted GACP to recover its collateral pursuant to *GACP's* motion filed August 6, 2020 to lift the automatic stay.[2] (Case No. 20-33627, ECF Nos. 290; 553 at 1). Importantly, the Lift Stay Order lays out the procedure for GACP to abandon any of its collateral: "Prior to the Payoff Notice Date, the Agent shall not abandon any of the Stay Relief Collateral without consent of the Debtors, the Committee, and the Prepetition ABL Agent (or their successors and assigns) or order of the Court." (Case No. 20-33627, ECF No. 553 at 8). Keystone offers no facts or argument to support the contention that GACP abandoned its collateral either in the ordinary course or pursuant to the Lift Stay Order. Indeed, Keystone's bare assertion to the contrary is insufficient to allow for amendments on this issue.

## II. QUANTUM MERUIT

GACP argues that Keystone's quantum meruit counterclaim should be dismissed because Keystone has not pled specific facts that show that Keystone's care for the equipment was taken for GACP's benefit (instead of BJ Services' benefit) or that GACP had reasonable notice that Keystone expected to be compensated by GACP. (ECF No. 42 at 9). To succeed on a quantum meruit claim, the claimant must prove:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be *paid by the person sought to be charged.*

---

[2] In its lift stay motion, GACP notes that its collateral "sits idle in Debtors' yards, *at garages*, *with repairmen*, in storage lots or otherwise not being utilized by the Debtors. . . ." (Case No. 20-33627, ECF No. 290 at 2) (emphasis added). While this is not an admission GACP knew Keystone held the equipment at issue, it is difficult to argue that GACP abandoned its interest in this equipment when it moved specifically to recover all of its collateral sitting in garages and with repairmen (like Keystone).

*Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018) (*Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)) (emphasis added).  Because Keystone seeks to charge GACP, it must show that GACP was notified of Keystone's expectation to be paid by GACP.

Keystone argues that GACP had notice of Keystone's expectation to be paid for caring for the equipment because the Lift Stay Order directs GACP to pay all costs and expenses incurred in connection with its collateral after the Lift Stay Order was entered.[3]  (ECF No. 49 at 10, Case No. 20-33627, ECF No. 553 at 3).  But simply because the Lift Stay Order directs GACP to pay costs incurred does not mean GACP was on notice that Keystone expected to be paid by GACP.  The Lift Stay Order does not mention Keystone, nor does it specify equipment in any party's care.  (*See* Case No. 20-33627, ECF No. 553).  Instead, the language upon which Keystone relies only goes to the responsibility to pay costs as between GACP and BJ Services.  Keystone provides no facts to support the contention that GACP was on notice of Keystone's expectation of compensation from GACP.  There is no doubt that Keystone expected to be paid for its services.  But if Keystone seeks to hold GACP liable under a theory of quantum meruit, GACP must have been notified that Keystone expected payment *from GACP*.  Keystone does not allege facts showing that GACP had such notice.  Keystone does not state a valid claim for quantum meruit; that counterclaim is dismissed.

---

[3] The Lift Stay Order directs GACP to "pay for all costs and expenses chargeable to or incurred in connection with the Stay Relief Collateral from and after the entry of this Order." (ECF No. 49 at 10). Stay Relief Collateral is defined as "Collateral" minus "Excluded Collateral." (Case No. 20-33627, ECF No. 553 at 2). Collateral is defined as "[GACP's] collateral." (Case Doc. No. 20-33627, ECF No. 553 at 1–2).

**III.   UNJUST ENRICHMENT**

GACP argues that Keystone fails to plead specific facts sufficient to allege that GACP obtained a benefit by fraud, duress, or the taking of an undue advantage. (ECF No. 42 at 10). "[U]njust enrichment is based upon the equitable principle that a person receiving benefits which were unjust for him to retain ought to make restitution." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 461 (5th Cir. 2017) (quoting *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex. App.—Fort Worth 1994, writ denied)); *see Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 367 (Tex.App.-Dallas 2009, pet. denied))). A party is unjustly enriched when he obtains a benefit from anther by "fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559, 560, 562 (1948)). To survive the motion to dismiss, Keystone must plead facts showing that GACP obtained the benefit by fraud, duress, or taking an undue advantage.

In its response, Keystone argues that "GACP knowingly allowed its Equipment to sit for over a year and has unduly taken advantage of Keystone, its facilities, and its resources in caring for and storing the Equipment." (ECF No. 49 at 12). But Keystone does not plead specific facts sufficient to show that GACP took an undue advantage. For example, Keystone does not state that GACP knew that Keystone was caring for the equipment prior to February 11, 2022 (when GACP demanded the return of the equipment). And it is not sufficient to allege that fact for the first time in a response to the motion to dismiss. (*See* ECF No. 49 at 12). Nor do the counterclaims state

whether Keystone ever sought payment for the storage during BJ Services' bankruptcy. While it may seem unfair that GACP should obtain the benefit of the cared-for equipment without paying for Keystone's care, Keystone has not pled specific facts showing that GACP obtained a benefit by taking an undue advantage. Keystone does not state a valid claim for unjust enrichment; that counterclaim is dismissed.

## IV. ATTORNEYS' FEES

Section 38.001 of the Texas Civil Practice and Remedies Code permits recovery of attorneys' fees if the claim is for rendered services or performed labor. TEX. CIV. PRAC. & REM. CODE § 38.001. Keystone's claim is for rendered services or performed labor. Section 70.008 of the Texas Property Code permits the recovery of attorneys' fees in "a suit concerning possession of a motor vehicle, motorboat, vessel, or outboard motor and a debt due on it." TEX. PROP. CODE § 70.008. This suit concerns possession of motor vehicles and debt due on them. Keystone has presented sufficient facts to plausibly allege a claim for attorneys' fees.

## V. AMENDING THE COUNTERCLAIMS

If the Court dismisses any of the counterclaims, Keystone seeks leave to amend. (ECF No. 49 at 13). Keystone amended its Answer and Counterclaims once. (*See* ECF Nos. 35; 36). GACP filed a responsive motion. (ECF No. 42). Therefore, Keystone may only amend with GACP's written consent or the Court's leave. FED. R. CIV. P. 15(a). Leave to amend should be freely given when justice so requires. FED. R. CIV. P. 15(a). Courts consider five factors in considering motions to amend: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003)). For the quantum meruit and unjust enrichment

counterclaims, all five factors weigh in favor of permitting Keystone to include basic facts so the Court may assess their plausibility. This case has progressed rapidly; the Court has no evidence of bad faith; there is no repeated failure to cure deficiencies because the Answer and Counterclaims have only been amended once; GACP has not alleged that it will be prejudiced by another amendment; and if Keystone pleads certain specific facts, it may be able to succeed on its counterclaims. Leave to amend those counterclaims is warranted. However, the Court denies leave to amend the declaratory judgment of abandonment counterclaim because it would be futile to do so. The record establishes the absence of abandonment as a matter of law. Even artful repleading will not revive that counterclaim.

## CONCLUSION

A separate order will be entered.

SIGNED 03/01/2023

Marvin Isgur
United States Bankruptcy Judge